**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **Shelly Pheigaru,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **CIVIL ACTION NO. 4:16-CV-03228** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Shell Exploration and Production** | § | |
| **Company,** | § | |
| | § | |
| *Defendant*. | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Shell Exploration & Production Company ("SEPCo") files this Motion for Summary Judgment.

## I.      INTRODUCTION

Plaintiff Shelly Pheigaru ("Pheigaru"), a former technical data management technician, alleges that SEPCo discriminated against her in violation of the Americans with Disabilities Act of 1990 ("ADAAA"), the Pregnancy Discrimination Act of 1978 ("PDA"), and Title VII of the Civil Rights Act of 1964.  More specifically, Pheigaru alleges that:  (1) SEPCo's policy on timely archiving data, as well as its policy on setting business goals has a disparate impact on pregnant employees who take a leave of absence; (2) SEPCo discriminated against her on the basis of disability—having a "large baby" and breast-feeding after her pregnancy—by giving her a poor performance ranking and/or terminating her as part of a workforce reduction; (3) SEPCo discriminated against her on the basis of gender/pregnancy by giving her a poor performance ranking and/or terminating her as part of a workforce reduction; and (4) SEPCo failed to accommodate her alleged disabilities.  SEPCo denies Pheigaru's allegations in their entirety.

SEPCo is entitled to summary judgment because Pheigaru does not have any evidence, much less competent summary judgment evidence, to establish a genuine dispute as to any material fact on any of her claims.  On the contrary, the undisputed evidence and Pheigaru's deposition testimony show that most of Pheigaru's claims are time-barred and exceed the scope of her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and, for those claims that are timely, Pheigaru's claims nevertheless fail as a matter of law:

- ▪ ***Disparate Impact Claim***:  Pheigaru's disparate impact claim is time-barred and exceeds the scope of her EEOC charge of discrimination.  Even if timely, Pheigaru cannot establish a *prima facie* case of disparate impact because she has no evidence that SEPCo's policy on timely archiving data or policy on setting business goals had a disparate impact on pregnant employees, particularly when she admitted that she was not adversely impacted by SEPCo's policies as a result of her leave of absence.

- ▪ ***Disability and Gender/Pregnancy Discrimination Claims***:  Pheigaru cannot establish a *prima facie* case of disability discrimination because Pheigaru was not disabled. Pheigaru cannot establish a *prima facie* case of disability or gender/pregnancy discrimination because Pheigaru cannot show that she was treated less favorably than non-pregnant or non-disabled employees.  Even if she could somehow establish a *prima facie* case, Pheigaru cannot rebut SEPCo's legitimate, non-discriminatory reasons for her performance ranking or termination.  Pheigaru conceded that her performance ranking was not affected by her leave of absence and further conceded that she was not "clearly better qualified" than employees who were not impacted by the workforce reduction.

- ▪ ***Failure to Accommodate Claim***:  Pheigaru's failure to accommodate claim is time-barred and exceeds the scope of her EEOC charge of discrimination. Even if timely, Pheigaru admitted that she is not alleging a failure to accommodate claim and further admitted that SEPCo provided her with reasonable accommodations when requested by her.

Because no genuine dispute as to any material fact exists regarding the essential elements of Pheigaru's claims, SEPCo is entitled to summary judgment.

II.     **STATEMENT OF FACTS**

A.     **Pheigaru's Employment History with SEPCo**

SEPCo is in the business of exploring for and producing gas and crude oil in the United States and its offshore waters.  Declaration of David Schewitz, attached as Exhibit 1 (hereinafter "Schewitz Dec. ___").   SEPCo's Exploration organization is responsible for finding hydrocarbons and gas and appraising the discovery before commerciality is declared.  *Id*. ¶ 3. Part of the exploratory process requires acquiring, processing, and storing data, which is the remit of the Geophysics, Geomatics and Data Management organization.  *Id*.  The Geophysics, Geomatics and Data Management organization consists of several departments, including the Data Management Group, which, in turn, consists of several teams, including the Well Data Management team.  *Id*.  SEPCo hired Pheigaru as a technical data management technician in the Well Data Management team on June 4, 2012.  Deposition of Shelly Pheigaru at 27:16-19, 36:2-4, 36:8-10, 36:13-37:7, attached as Exhibit 2 (hereinafter "Pheigaru Dep. at ___").   As a technical data management technician, Pheigaru was responsible for, among other things, gathering data from wells and loading the data into different repositories.  *Id*. at 38:5-13. Pheigaru understood that loading data into the different repositories within a ten-day period was a key indicator of her performance. *Id*. 39:2-40:16.   During her employment with SEPCo, Pheigaru primarily reported to Hector Romero ("Romero") and Randy Petit ("Petit").  *Id*. at 40:17-41:3.

B.     **Pheigaru's Goals and Performance Evaluation for 2012**

As a part of measuring her performance, in 2012, Pheigaru prepared her Goals and Performance Appraisal ("GPA"), which included various business goals.  Declaration of Randy Petit, attached as Exhibit 3 (hereinafter "Petit Dec. ___"), Exhibit A, 2012 GPA; Pheigaru Dep.

at 47:18-48:7.   As indicated in her GPA for 2012, Pheigaru set one of her business goals as

"ensur[ing] that all wells assigned to [her were] properly archived and attainable within ten (10)

business days."   Petit Dec. Exhibit A, 2012 GPA; Pheigaru Dep. at 48:17-49:1.   Pheigaru

acknowledged that one of the most essential functions of her position was to ensure that she

loaded data within ten business days.   Pheigaru Dep. at 49:2-8.   Based on her performance,

Pheigaru received an overall individual performance factor ("IPF") (hereinafter "IPF" or

"performance ranking") of .9 on her year-end performance evaluation for 2012.[1]   *Id.* at 50:6-10.

Pheigaru did not disagree with the performance ranking of .9 or any of Hector's comments in the

performance evaluation.   *Id.* at 49:10-19, 50:3-5; Petit Dec. Exhibit B, 2012 Final Appraisal.

### C.   Pheigaru's Goals and Performance Evaluation for 2013

The following year, in 2013, Pheigaru, once again, prepared her GPA and included the

business goal of "ensur[ing] that all wells assigned to [her were] properly archived and attainable

within ten (10) business days."   Petit Dec. Exhibit C, 2013 GPA; Pheigaru Dep. at 52:23-10,

54:1-17.   Pheigaru received an overall performance ranking of .8 on her year-end performance

evaluation for 2013.[2]   Pheigaru Dep. at 61:3-5.   In the performance evaluation, Hector detailed

some performance problems and outlined some specific development areas for Pheigaru.   Petit

Dec. Exhibit D, 2013 Final Appraisal.   Romero discussed the performance evaluation with

---

[1] SEPCo's performance ranking process involves a ranking session in which a ranking panel (including supervisors, a HR facilitator, and a line chairperson) is responsible for ranking individual performance relative to the group performance within a ranking population.  Petit Dec. Exhibit E, IPR.  At the end of a ranking process, individuals are attributed a performance ranking, which is designed to distribute monetary awards in a way that differentiates between different levels of performance within a ranking population.  *Id.*  The group performance ranking criteria consists of the following:  (1) individual performance against agreed targets, as recorded in the GPA; (2) contribution to business goals/priorities; and (3) various demonstrated behaviors.  *Id.*  Pheigaru understood that her individual performance was ranked relative to other employees within SEPCo.  Pheigaru Dep. at 52:10-16, 62:3-64:9, 151:8-153:8, 154:16-20, 155:10-157:2.

[2] In connection with determining Pheigaru's performance ranking, Romero completed an individual performance review feedback template, which was used in the performance ranking process. Petit Dec. Exhibit F, 2013 IPR Feedback.  Pheigaru agreed that the performance evaluation looked the same as the individual performance review feedback template.  Pheigaru Dep. at 59:2-61:2.

28249017.3

4

Pheigaru to make her aware of her performance problems and provide her with an opportunity to improve her performance. Pheigaru Dep. at 53:11-15, 54:18-55:3, 58:12-59:1. Pheigaru did not disagree with anything on the performance evaluation other than Hector's comment about her "initial struggles." *Id*. at 55:4-58:11. Pheigaru admitted that the performance ranking of .8 was Romero's opinion of her performance and, as a result, she was not sure of any reason to dispute Romero's belief that she deserved a performance ranking of .8. *Id*. at 61:3-66:6.

### D.      Pheigaru Requested a Leave of Absence Related to Her Pregnancy

On January 23, 2014, Pheigaru and her health care provider, Dr. Todd Holt, completed a medical certification form in which Pheigaru requested a leave of absence related to her pregnancy from March 8, 2014 to April 18, 2014. Exhibit 4, Medical Certification at 5; Pheigaru Dep. at 69:25-70:7. As indicated on the medical certification form, Dr. Holt believed that there were no complications with Pheigaru's pregnancy. Exhibit 4, Medical Certification at 3. After her delivery, on March 12, 2014, Pheigaru submitted another medical certification form in which she requested a leave of absence from March 3, 2014 to April 28, 2014. *Id*. at 7. Dr. Holt provided comments indicating that Pheigaru would need a "normal recovery period" of eight weeks following her delivery via C-Section. *Id*. Pheigaru admitted that none of the medical records from Reed Group, SEPCo's third party leave provider, indicated that she had a difficult pregnancy. Pheigaru Dep. at 72:10-19. Although she had initially requested a leave of absence until April 28, 2014, Pheigaru subsequently requested additional time off and ultimately returned to work on May 19, 2014. *Id*. at 70:8-71:22, 73:10-14, 76:15-77:14. Pheigaru admitted that she had no issue requesting or taking a leave of absence and that no one made any negative comments about her pregnancy. *Id*. at 72:20-73:9, 73:17-76:14, 77:15-21.

**E.** **Pheigaru's Continued Performance Problems and Repeated Failure to Meet SEPCo's Performance Expectations**

Based on a review of the loading times for Pheigaru from January 2014 to October 2014, there were several months in which Pheigaru failed to archive data within the required 10-day period.  Declaration of Karl Fleischmann, attached as Exhibit 1 (hereinafter "Fleischmann Dec. ___"), Exhibit A, October 22, 2014 Email.  Instead of placing Pheigaru on a performance improvement plan, Romero decided to engage in a formal performance discussion with Pheigaru. *Id.*; Pheigaru Dep. at 54:19-85:6.  During her mid-year review for 2014, Romero counseled Pheigaru regarding her decreasing performance, particularly her failure to timely archive data within the required 10-day period.  Pheigaru Dep. at 78:22-82:5; Fleischmann Dec., Exhibit A, October 22, 2014 Email.  Pheigaru admitted that Romero believed that her performance was decreasing.  Pheigaru Dep. at 82:6-11.

**F.** **Pheigaru was not Penalized for any Excessive Loading Times During her Leave of Absence or While She Breast-Fed**

Pheigaru claims that she was penalized for having excessive loading times during her leave of absence and while she breast-fed.  *Id.* at 82:12-84:16; Exhibit 6, Initial Disclosures.  However, SEPCo's records, as summarized in pertinent part below, show that the wells to which Pheigaru was assigned during her employment with SEPCo did not have any excessive loading times during her leave of absence from March 3, 2014 to May 18, 2014:

| March 2014 | April 2014 | May 2014 |
|:---:|:---:|:---:|
| | | 21 |

Petit Dec. Exhibit G, Well Data Records; Fleischmann Dec., Exhibit A, October 22, 2014 Email.  Pheigaru admitted that SEPCo's records show that she was not penalized for any excessive loading times during her leave of absence—in other words, either the wells to which she was

assigned did not receive any data or were reassigned to other employees during her leave of absence.  Pheigaru Dep. at 85:7-93:2, 199:19-222:15.  SEPCo's records also show that the excessive loading time of 21 days in the month of May occurred after Pheigaru returned from her leave of absence on May 19, 2014 because the well did not receive any data until May 23, 2014. Petit Dec. Exhibit G, Well Data Records.  Pheigaru admitted that SEPCo's records show that the excessive loading time of 21 days that occurred in the month of May occurred after she returned from her leave of absence.  Pheigaru Dep. at 209:8-210:18.  Pheigaru admitted that she is not aware of any other wells to which she was assigned other than those identified in SEPCo's records and further admitted that she does not have any evidence to dispute the accuracy of SEPCo's records.  *Id*. at 222:16-224:19.  Pheigaru admitted that she could not think of any work that she did not get done as a result of her breast-feeding.  *Id*. at 310:17-312:19.

### G.      Pheigaru's Goals and Performance Appraisal for 2014

In 2014, Pheigaru, once again, prepared her GPA and included the business goal of "ensur[ing] that all wells assigned to [her were] properly archived and attainable within ten (10) business days."  Petit Dec. Exhibit H, 2014 GPA; Pheigaru Dep. at 93:5-23.  Pheigaru received a performance ranking of .7 on her year-end performance evaluation for 2014.[3]  Pheigaru Dep. at 100:5-8.  In the performance evaluation, Petit noted, among other things, that:  (1) Pheigaru "needs to focus more on the goals she committed to;" (2) Pheigaru's "workload is smaller than many of her peers and she still has challenges delivering against targets;" and (3) Pheigaru's "performance has declined in 2014."  Petit Dec. Exhibit I, 2014 Final Appraisal.

---

[3] In connection with determining Pheigaru's performance ranking, Petit completed an individual performance review feedback template, which was used in the performance ranking process.  Petit Dec. ¶ 3 and Exhibit J, 2014 IPR Feedback.  Pheigaru agreed that the performance evaluation looked similar to the individual performance review feedback template.  Pheigaru Dep. at 99:5-100:4.  Pheigaru's performance ranking was based on her performance when she worked in 2014.  Petit Dec. ¶ 3.  Pheigaru's performance ranking was not reduced or pro-rated as a result of her leave of absence in 2014.  *Id*.

28249017.3

In an effort to assist Pheigaru with improving her performance, Petit indicated that, at the end of 2014, he had reassigned Pheigaru to handle surveillance activities to "give her a fresh start in a different area."  *Id.*  Pheigaru did not disagree with anything on the performance evaluation other than Petit's comment that her "workload is smaller than many of her peers."  Pheigaru Dep. at 94:12-95:18, 100:5-17.   Pheigaru admitted that she had no idea of the workload of other employees and further admitted that Petit could have perceived that her workload was smaller than her peers.  *Id.* at 95:19-96:7, 96:23-98:18.

**H.**     **Pheigaru's Mid-Year Review for 2015**

After Pheigaru's year-end performance appraisal for 2014, Petit began meeting with Pheigaru on a weekly basis from February 2014 to March 2014 to further assist Pheigaru in improving her performance.  *Id.* at 105:18-106:14, 109:10-22, 110:6-111:5, 114:4-12, 115:25-116:5.  During her mid-year review for 2015, Petit noted, among other things, that Pheigaru had "shown steady progress towards improving her performance," but that her improvement needed to continue without weekly meetings and that she "need[ed] to follow proper time recording and reporting practices," in that her "[e]xceptions need[ed] to be recorded in a timely manner, without a reminder from [him]."[4]  Petit Dec. Exhibit K, 2015 Mid-Year Review.  Pheigaru did not disagree with anything on her mid-year review other than Petit's comment that exceptions needed to be recorded in a timely manner.  Pheigaru Dep. at 123:22-126:5, 128:11-20.  However, at her deposition, Pheigaru admitted that she routinely failed to record exceptions in a timely manner even after being reminded by Petit.  *Id.* at 134:7-150:18; Petit Dec. Exhibit L, Exceptions Emails.

---

[4] Exceptions signifies vacation and other time off.  Petit Dec. Exhibit L, Exceptions Emails.

I.      **SEPCo Terminated Pheigaru as a Result of a Workforce Reduction**

As a result of the economic downturn in the oil and gas industry, SEPCo experienced less drilling of exploration wells as well as reduced seismic demand.  Schewitz Dec. ¶ 4 and Exhibit A, Workforce Reduction.  Despite its efforts to reduce costs, to correlate with the reduced business activity level, SEPCo was forced to make the tough decision to reduce its workforce by 10-20%, to create a stronger and more competitive organization.  *Id.*; Pheigaru Dep. at 168:12-168:22.  In selecting who would be impacted, SEPCo considered a number of factors, including performance, capabilities, demand for work/services, competencies, skills, and SEPCo's short and long term organizational needs.  Schewitz Dec. ¶ 7 and Exhibit A, Workforce Reduction; Fleischmann Dec. ¶ 5; Petit Dec. ¶ 5 and Exhibit M, Script; Pheigaru Dep. at 181:9-182:1.

For the Data Management Group, David Schewitz ("Schewitz"), General Manager, Geophysics West, prepared a spreadsheet of the fifty-three employees within the Data Management Group.  Schewitz Dec. ¶ 5 and Exhibit B, Data Management Group.  As reflected in the spreadsheet, employees were sorted based on average performance rankings for 2012, 2013, and 2014. *Id.* Karl Fleischmann ("Fleischmann"), TDM Manager, Technical Data Management/Americas, in collaboration with each respective supervisor, modified the spreadsheet to identify ten employees (marked in red) who would be impacted by the workforce reduction, which was consistent with SEPCo's decision to reduce its workforce by 10-20%. Fleischmann Dec. ¶ 3 and Exhibit B, Impacted Employees; Petit Dec. ¶ 5; Schewitz Dec. ¶ 5. Pheigaru, with an average performance ranking of .8, ranked lowest within the Well Data Management team and second lowest within the Data Management Group.  Fleischmann Dec. ¶ 4 and Exhibit B, Impacted Employees; Schewitz Dec. ¶ 6; Petit Dec. ¶ 4; Pheigaru Dep. at 182:2-19.

In the Well Data Management team, four employees, including Pheigaru, were impacted by the workforce reduction.[5]  Fleischmann Dec. ¶ 4 and Exhibit B, Impacted Employees; Schewitz Dec. ¶ 6; Petit Dec. ¶ 4; Pheigaru Dep. at 186:22-187:16.  Pheigaru was selected for termination based on her lower level of sustained performance.  Fleischmann Dec. ¶ 5 and Exhibit B, Impacted Employees; Schewitz Dec. ¶ 7; Petit Dec. ¶ 7 and Exhibit M, Script.  Pheigaru was notified on July 14, 2015 that she would be terminated effective August 31, 2015.  Petit Dec. ¶ 5.

### III.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a court must determine whether "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other material," if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  A court resolves controversies regarding material facts in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted *evidence* of contradictory facts."  *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996) (emphasis added).  To defeat a properly supported motion, the nonmovant must present affirmative evidence that goes beyond "conclusory allegations and denials, speculations,

---

[5] Of those employees who were not impacted by the workforce reduction, in particular Leah Camilli ("Camilli"), Yanwen Fan ("Fan"), Luke Harkleroad ("Harkleroad"), Steve Heying ("Heying"), Angelica Medrano ("Medrano"), and Jody Tassin ("Tassin"), Pheigaru admitted that:  (1) she does not have any personal knowledge of anyone's performance; (2) although she claims that, in general, she is better qualified than Camilli because she has better work ethics, Pheigaru admitted that does not have any specific examples of Camilli not having good work ethics and further admitted that she does not know how Camilli—who was, at the time of the workforce reduction, on maternity leave, but subsequently returned to work and continued to work at SEPCo despite being pregnant and taking maternity leave—was treated better than her; (3) she does not think that she was better qualified than Fan, Heying, Medrano, or Tassin; and (4) although she claims that she was better qualified than Harkleroad because she had a degree and was more proactive about safety, Pheigaru admitted that she can't say one way or the other as to whether Harkleroad was not proactive about safety.  Pheigaru Dep. 174:19-177:1, 192:20-198:15, 248:3-252:12.
28249017.3

improbable inferences, unsubstantiated assertions, and legalistic arguments" that a genuine issue of material fact does exist." *Soliz v. Assocs. in Medicine, P.A*., No. H-06-2785, 2007 U.S. Dist. LEXIS 60589, at *6-7 (S.D. Tex. Aug. 17, 2007).

## IV.   ARGUMENT AND AUTHORITIES

### A.   Pheigaru's Disparate Impact Claim Fails as a Matter of Law

#### 1.   Pheigaru Failed to Exhaust Her Disparate Impact Claim

A plaintiff suing under Title VII for alleged discrimination must exhaust his or her administrative remedies before filing a civil lawsuit. *Taylor v. Books-A-Million, Inc*., 296 F.3d 376, 378-79 (5th Cir. 2002). A plaintiff must satisfy this administrative requirement by filing a timely charge of discrimination with the EEOC. *Id*. at 379. For a claim under Title VII, a plaintiff must file a charge of discrimination within 300 days of the alleged discriminatory action. 42 U.S.C. § 2000e-5(e)(1). The scope of the civil lawsuit is limited to the scope of the investigation that "can reasonably be expected to grow out of the charge of discrimination." *Richardson v. Porter Hedges, LLC*, 22 F. Supp. 3d 661, 665 (S.D. Tex. 2014). To determine whether an EEOC investigation into a particular claim might reasonably have been expected to grow out of a charge of discrimination, courts conduct a fact-intensive analysis of the charge of discrimination. *Id*. However, courts "will not construe the charge to include facts that were initially omitted." *See Davis v. Fort Bend Cnty*., No. 4:12-CV-131, 2016 U.S. Dist. LEXIS, at *20-21 (S.D. Tex. Aug. 24, 2016).

Pheigaru alleges that she received a poor performance ranking in February 2015 because SEPCo's policy on "load times" and "goals" has a disparate impact on pregnant employees who take maternity leave.[6] Plaintiff's Original Complaint ¶¶ 32-37; Pheigaru Dep. at 340:13-342:5.

---

[6] Although she received notice of her performance ranking in February 2015, Pheigaru's performance ranking was for her performance in 2014, as discussed below.

Pheigaru had 300 days to file a charge of discrimination under Title VII.  42 U.S.C. § 2000e-5(e)(1).  Although she filed a charge of discrimination on October 28, 2015, Pheigaru never filed a charge of discrimination alleging a disparate impact claim.  Exhibit 7, Pheigaru Charge.  As such, Pheigaru's disparate impact claim is statutorily time-barred and should be dismissed.

Even if not time-barred—which it is—the EEOC's investigation into Pheigaru's disparate impact claim could not have been reasonably expected to grow out of Pheigaru's charge of discrimination.  A disparate treatment claim involves an employment action that treats an individual employee differently than other employees based on a protected category such as gender.  *Richardson*, 22 F. Supp. 3d at 665.  In contrast, a disparate impact claim involves a facially neutral employment policy that, in fact, had a disproportionately adverse effect on a protected category.  *Id.*  A neutral employment policy is the "cornerstone" of an EEOC disparate impact claim investigation because the EEOC must not only evaluate the policy's effect on the protected class but also the business justification for the challenged policy.  *Id.*  A charge of discrimination that alleges disparate treatment and does not identify a specific policy does *not* exhaust a disparate impact claim.  *Id.* at 665-66.

Only an EEOC investigation into disparate treatment could have been reasonably expected to grow out of Pheigaru's charge of discrimination.  Indeed, in her charge of discrimination, Pheigaru alleges, among other things, that she was "subjected to different terms and conditions of employment" on the basis of gender and disability.  Exhibit 7, Pheigaru Charge.  This allegation—her being treated differently as compared to others—is an example of disparate treatment, not disparate impact, because, as Pheigaru alleged herself, it involves her being *individually* treated worse than others based on her pregnancy.  *See Telkamp v. Stein Mart, Inc.*, No. 3:00-CV-0340-D, 2002 U.S. Dist. LEXIS 1808, at *16-18 (N.D. Tex. Feb. 5, 2002).

Even under the most liberal interpretation, Pheigaru's charge of discrimination did not mention the word "policy"—let alone identify a facially neutral employment policy or allege facts that could have alerted the EEOC to investigate a policy.  *See Richardson*, 22 F. Supp. 3d at 665. Because she failed to exhaust her disparate impact claim, Pheigaru's disparate impact claim fails as a matter of law and should be dismissed.

### 2. Pheigaru Cannot Establish a *Prima Facie* Case of Disparate Impact

Although her Original Complaint alleges a disparate impact claim, Pheigaru failed to allege a disparate impact claim in her initial disclosures.  Plaintiff's Original Complaint ¶ 32-37; Exhibit 6, Initial Disclosures.  Assuming *arguendo* that she exhausted her disparate impact claim, Pheigaru nevertheless cannot establish a *prima facie* case of disparate impact.  To establish a *prima facie* case of disparate impact, Pheigaru must prove that:  (1) a facially neutral employment policy; (2) had a disproportionately adverse effect on a protected category.  *See id*. A plaintiff cannot simply point to a policy—such as an employer's policy on "load times" and "goals"—and  allege, in a conclusory manner, that it is less generous to pregnant employees than non-pregnant employees.  *See Smith v. City of Jackson*, 544 U.S. 228, 241 (2005).  A plaintiff must isolate and identify "the *specific* employment practices that are allegedly responsible for any observed statistical disparities."  *See id*.

Pheigaru  alleges she received a poor performance ranking for 2014 because SEPCo's policy on timely archiving data within a 10-day period as well as its policy on setting business goals each year results in a disparate impact on pregnant employees who take a leave of absence. Plaintiff's Original Complaint at ¶ 32-37; Pheigaru Dep. at 340:8-343:15.  However, Pheigaru has not presented any evidence, let alone statistical evidence, to show the alleged disparity between pregnant and non-pregnant employees.  *See Smith*, 544 U.S. at 241; *see also* Pheigaru

Dep. at 343:16-20.  As reproduced in pertinent part below, SEPCo's policy on the performance

ranking process specifically provides for an equitable approach towards all employees—not just

pregnant employees—who have been absent from work for less than a calendar year:

**Absences of less than one calendar year**

> If an individual has been absent from work for a substantial part of the period
> under review, (e.g. for sabbatical, maternity leave or illness) it is important to
> maintain an equitable approach in relation to the peer group.  The IPF should not
> be reduced or 'pro-rated' to reflect the proportion of the year a person has been
> absent.  Wherever possible the individual is to be ranked in the standard way
> based on performance in the job.

Petit Dec. Exhibit E, IPR; *see also Rhett v. Carnegie Ctr. Assocs*., 129 F.3d 290, 295-296 (3rd

Cir. 1997) (discussing that the PDA does not require employers to treat pregnant women better

than other temporarily disabled employees).  At her deposition, Pheigaru admitted that SEPCo's

records show that she was not penalized for any excessive loading times during her leave of

absence—in other words, either the wells to which she was assigned did not receive any data or

were reassigned to other employees during her leave of absence.  Pheigaru Dep. at 85:7-93:2,

199:19-222:15.

Although she alleges that Romero insisted on her including business goals related to

Health, Safety, Security and the Environment ("HSSE") on her GPA for 2014, even though she

would be out on a leave of absence and could not attend one of the safety meetings, Pheigaru

admitted that Romero told her that the business goals could be revised and, in fact, not only were

her business goals revised, but on her final appraisal, Romero noted "Shelly is fully committed to

HSSE, and is a volunteer on the Building F 10th Floor Safety Team"—all of which undermine

her belief that SEPCo's policy on setting goals results in disparate impact on pregnant

employees.  *Id*. at 340:24-342:5; Petit Dec. Exhibit I, 2014 Final Appraisal.  Pheigaru has no

competent summary judgement evidence to raise a material fact issue on her disparate impact

claim and, therefore, Pheigaru's disparate impact claim fails as a matter of law.

**B.      Pheigaru's Disability and Gender Discrimination Claims Fail as a Matter of Law[7]**

To establish a *prima facie* case of disability discrimination, Pheigaru must prove that:  (1)

she was "disabled" as defined under the ADAAA; (2) she was qualified; (3) she suffered an

adverse employment action; and (4) she was treated less favorably than non-disabled employees.

*Daigle v. Liberty Life Ins. Co*., 70 F.3d 394, 396 (5th Cir. 1995).

To establish a *prima facie* case of gender/pregnancy discrimination, Pheigaru must prove

that: (1) she is a member of a protected class; (2) she was qualified; (3) she suffered an adverse

employment action; and (4) she was treated less favorably than similarly situated employees.

*See Septimus v. Univ. of Houston*, 399 F.3d 601, 609-610 (5th Cir. 2005).

If Pheigaru successfully establishes a *prima facie* case of discrimination, the burden shifts

to SEPCo to articulate a legitimate, non-discriminatory reason for the employment action.  *See*

*McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973).   Once SEPCo offers a legitimate,

non-discriminatory reason, all inferences of discrimination disappear and the burden shifts back

to Pheigaru to prove that SEPCo's proffered reason is pretext for discrimination.  *Id*.

**1.      Pheigaru Cannot Establish a *Prima Facie* Case of Disability Discrimination Because She was Not Disabled**

Pheigaru alleges that she was disabled because she had a "large baby" and breast-fed

after her pregnancy.   Pheigaru Dep. at 296:6-298:3.   The ADAAA defines disability as "a

physical or mental impairment that substantially limits one or more major life activities."   42

---

[7] Title VII prohibits discrimination because of sex.   *Dimacali v. Cardiology Assocs. of Corpus Christi*, No. C-09-111, 2010 U.S. Dist.LEXIS 40005, at *15 (S.D. Tex. Apr. 23, 2010).  As amended by the PDA, Title VII defines the term "because of sex" to include "because of or on the basis of pregnancy, childbirth, or related medical conditions." *Id*.  Pheigaru's gender discrimination claim is based on her pregnancy and, as such, SEPCo has analyzed Pheigaru's gender and pregnancy discrimination claims concurrently.

U.S.C. § 12102(1)(a).  To be substantially limited, an individual must have an impairment that renders her "[u]nable to perform a major life activity that the average person in the general population can perform" or significantly restricts "the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity."  29 C.F.R. § 1630(2)(j).  Absent an unusual circumstance, pregnancy is _not_ a physical impairment.  *Huff v. DRE Mgmt.*, No. 3:12-CV-0414-B, 2012 U.S. Dist. LEXIS 105859, at *11 (N.D. Tex. July 30, 2012); *Appel v. Inspire Pharms., Inc.*, 712 F. Supp. 2d 538, 547 (N.D. Tex. 2010) (discussing that conditions such as pregnancy that are not a result of a physiological disorder are not impairments).

Pheigaru's medical records from the Reed Group do not show that Pheigaru had any sort of difficulty with her pregnancy to qualify her pregnancy as a disability.  Pheigaru Dep. at 299:22-300:12.  However, even if having a large baby, albeit eight pounds, qualified as a disability, Pheigaru has not offered any evidence to show that having a large baby substantially limited a major life activity—in fact, Pheigaru admitted that:  (1) she did not take any time off from work, other than her requested leave of absence; (2) she was induced just six days early; and most importantly, (3) having a large baby did not affect her ability to do her job.  *Id.* at 297:22-299:21, 300:13-19, 310:21-312:19.

Similarly, Pheigaru's choice to breast-feed after her pregnancy does not qualify as a disability.  *See Bond v. Sterling*, 997 F. Supp. 306, 311 (N.D.N.Y. 1998) (discussing that breast-feeding is not a disability).  Nevertheless, even if breast-feeding qualified as a disability, Pheigaru has not offered any evidence to show that breast-feeding substantially limited a major

life activity—once again, Pheigaru admitted that she could not think of any work that she did not

get done as a result of her breast-feeding.  Pheigaru Dep. at 310:21-312:19.

> **2.    Pheigaru Cannot Establish a *Prima Facie* Case of Disability or Gender Discrimination Because She Cannot Show that She was Treated Less Favorably than Non-Pregnant or Non-Disabled Employees**

Pheigaru cannot show that she was treated less favorably than other similarly situated

non-pregnant or non-disabled employees.  The Fifth Circuit has held that employees are similarly

situated if their circumstances are "nearly identical."  *Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259

(5th Cir. 2009).   In other words, employees are similarly situated if they have the same

supervisor and same work responsibilities.  *Id*.  Although she testified that only one employee,

who reported to Petit, performed data loading work, Pheigaru has no evidence that the employee

exhibited more performance deficiencies than her, but nevertheless received a higher

performance ranking than her.   Pheigaru Dep. at 173:13-174:18.

Similarly, Pheigaru cannot point to any non-pregnant or non-disabled employee, who

reported to Petit, that had the same or lower average performance ranking than her, but was not

terminated as part of the workforce reduction.  As discussed above, three other employees were

impacted by the workforce reduction and Pheigaru had the lowest average performance ranking.

Fleischmann Dec. at ¶ 4 and Exhibit B, Impacted Employees; Schewitz Dec. ¶ 6; Petit Dec. ¶ 4.

Pheigaru Dep. at 182:2-19, 186:22-187:16.  This fact coupled with Pheigaru's testimony that

other pregnant employees were treated more favorably than her is fatal to her discrimination

claim.  To be sure, Pheigaru admitted that Camilli—who, at the time of the workforce reduction,

was on maternity leave—subsequently returned to work and has continued to work at SEPCo

despite being pregnant and taking a leave of absence—and further admitted that Medrano—who

was pregnant twice during her employment with SEPCo—has continued to work at SEPCo and,

28249017.3

17

in fact, is considered the best performer by Petit despite being pregnant and taking a leave of absence, not once but twice, during her employment with SEPCo.  Pheigaru Dep. at 248:3-252:12, 285:23-287:18.

> ### 3. Pheigaru Cannot Rebut SEPCo's Legitimate, Non-Discriminatory Reasons for Her Performance Ranking or Her Termination

Assuming *arguendo* that she can establish a *prima facie* case of discrimination, Pheigaru cannot rebut SEPCo's legitimate, non-discriminatory reasons for her performance ranking or her termination.

> #### a. Pheigaru Has No Evidence that SEPCo's Legitimate, Non-Discriminatory Reason for Her Performance Ranking is Pretextual

Pheigaru has no evidence that the reason for her performance ranking for 2014 was pretext for gender or disability discrimination.  As discussed above, SEPCo's decision to attribute a performance ranking of .7 to Pheigaru for 2014 was based on its good faith belief of Pheigaru's performance.  *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue.").

Pheigaru alleges that her performance ranking decreased in 2014 because: (1) she was penalized for having excessive loading times during her leave of absence and while she breast-fed; and (2) she was penalized for working nine and a half months as opposed to twelve months because the reduced time at work affected her "production."  Plaintiff's Original Complaint ¶ 13; Pheigaru Dep. at 82:12-84:16; Exhibit 6, Initial Disclosures.  However, contrary to Pheigaru's allegations, the undisputed evidence and Pheigaru's own deposition testimony single-handedly undermine any evidence of gender or disability discrimination.  First, Pheigaru admitted that

SEPCo's records show that she was not penalized for any excessive loading times during her leave of absence—in other words, either the wells to which she was assigned did not receive any data or were reassigned to other employees during her leave of absence.  Pheigaru Dep. at 85:7-93:2, 199:19-222:15.  Second, Pheigaru admitted that she could not think of any work that she did not get done as a result of her breast-feeding.  *Id.* at 310:17-312:19.  Third, SEPCo's policy on the performance ranking process specifically provides for an equitable approach towards employees who have been absent from work for less than a calendar year—in other words, employees are ranked based on performance in the job and, as a result, are not penalized for taking a leave of absence.[8]  Petit Dec. Exhibit E, IPR. Fourth, Pheigaru admitted that the business goals in her GPA were based on the timeliness of her work, not the quantity of her work—in which case, she was not penalized for taking a leave of absence—and further admitted that she has no evidence that she was terminated for "low production."  Pheigaru Dep. at 270:25-272:2, 274:12-275:13.

Fifth, other than Petit's comment that her "workload is smaller than many of her peers," Pheigaru did not disagree with anything on the performance evaluation for 2014, which served as the basis for her performance ranking for 2014, and further admitted that she has no idea of the workload of other employees and that Petit could have perceived that her workload was smaller than her peers.  *Id.* at 94:12-96:7, 96:23-98:18, 100:5-17.  Sixth, Pheigaru admitted that Petit was an honest individual who would not discriminate against her for any reason.  *Id.* at 44:21-45:1.

### b.    Pheigaru Has No Evidence that SEPCo's Legitimate, Non-Discriminatory Reason for Her Termination is Pretextual

Pheigaru has no evidence that the reason for her termination was pretext for gender or disability discrimination.   As discussed above, SEPCo terminated Pheigaru as part of a

---

[8] Pheigaru's performance ranking was based on her performance when she worked in 2014.  Petit Dec. at ¶ 3. Pheigaru's performance ranking was not reduced or pro-rated as a result of her leave of absence in 2014.  *Id.*

28249017.3

workforce reduction.  *See EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (discussing that a reduction in force "is a legitimate, non-discriminatory reason for discharge"). SEPCo's decision to include Pheigaru in the workforce reduction was based on its good faith belief that her performance was lower when compared to other employees.  *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue.").

To establish pretext, Pheigaru must produce evidence creating a fact issue as to whether she was "clearly better qualified" than employees who reported to Petit and were not impacted by the workforce reduction.  *See Chapman v. Dallas Morning News, L.P.*, No. 3:06-cv-2211-B, 2008 U.S. Dist. LEXIS 42191, at *23-24 (N.D. Tex. May 27, 2008).  Pheigaru's evidence must show that the disparities in qualifications between herself and those employees "were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen" those employees over her.  *Id.*; *see also Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) (holding that the losing candidate's qualifications must "leap from the records and cry out to all who would listen that [s]he was vastly—or even clearly—more qualified").

Once again, the undisputed evidence and Pheigaru's own deposition testimony single-handedly undermine any evidence of gender or disability discrimination.  As discussed above, six employees who reported to Petit were not impacted by the workforce reduction, in particular Camilli, Fan, Harkleroad, Heying, Medrano, and Tassin.  Petit Dec. ¶ 4; Schewitz Dec. ¶ 6; Fleischmann Dec. ¶ 4.  Pheigaru admitted that she does not have any personal knowledge of

anyone's performance.  Pheigaru Dep. at 174:19-177:1.  Nevertheless, Pheigaru cannot show that she was clearly better qualified than any of the six employees:

- **Camilli**: Although she claims that, in general, she is better qualified than Camilli because she had better work ethics, Pheigaru admitted that she does not have any specific examples of Camilli not having good work ethics.  Pheigaru further admitted that she does not know how Camilli—who was, at the time of the workforce reduction, on maternity leave, but subsequently returned to work and continued to work at SEPCo despite being pregnant and taking maternity leave—was treated better than her.  Exhibit __, Pheigaru Dep. at 192:20-194:22, 248:3-252:12.

- **Fan**:  Pheigaru admitted that she does not think that she was better qualified than Fan.  *Id*. at 197:5-16.

- **Harkleroad**:   Although she claims that she was better qualified than Harkleroad because she had a degree and was more proactive about safety, Pheigaru admitted that she can't say one way or the other as to whether Harkleroad was not proactive about safety.  *Id*. at 194:23-197:21.

- **Heying**:  Pheigaru admitted that she does not think that she was better qualified than Heying.  *Id*. at 196:22-197:4.

- **Medrano**:  Pheigaru admitted that she does not think that she was better qualified than Medrano.  *Id*. at 197:23-198:15

- **Tassin**:  Pheigaru admitted that she does not think that she was better qualified than Tassin.  *Id*. at 197:17-22.

Despite her attempt to paint the workforce reduction as discriminatory, Pheigaru admitted that Petit would not discriminate against her for any reason and further admitted that she does not know if Schewitz or Fleischmann would discriminate against her for any reason.  *Id*. at 44:21-46:9.  Pheigaru has no competent summary judgement evidence to raise a material fact issue on her disability and gender claims and, therefore, Pheigaru's disability and gender claims fail as a matter of law.

28249017.3

21

### C.  Pheigaru's Failure to Accommodate Claim Fails as a Matter of Law

#### 1.  Pheigaru Failed to Exhaust Her Failure to Accommodate Claim

Pheigaru alleges that SEPCo failed to accommodate her disability.  Plaintiff's Original Complaint ¶ 23.  As discussed above, a plaintiff must file a charge of discrimination within 300 days of the alleged discriminatory action.  U.S.C. § 2000e-5(e)(1).  Although she filed a charge of discrimination on October 28, 2015, Pheigaru never filed a charge of discrimination alleging a failure to accommodate claim.  Exhibit 7, Pheigaru Charge.  Even if not time-barred—which it is—the EEOC's investigation could not have been reasonably expected to grow out of Pheigaru's October 28, 2015 charge of discrimination because Pheigaru admitted that she never complained that SEPCo failed to accommodate her disability.  Pheigaru Dep. at 226:5-15.  Because she failed to exhaust her failure to accommodate claim, Pheigaru's failure to accommodate claim fails as a matter of law and should be dismissed.

#### 2.  Pheigaru Admitted that SEPCo Provided Reasonable Accommodations When Requested by Her

Although her Original Complaint alleges a failure to accommodate claim, Pheigaru failed to allege a failure to accommodate claim in her initial disclosures and, in fact, admitted that she is not alleging that SEPCo failed to accommodate her.  Plaintiff's Original Complaint ¶ 23; Exhibit 6, Initial Disclosures; Pheigaru Dep. at 231:24-232 (Q. . . . Are you alleging a failure to accommodate claim in this lawsuit?  A.  No).  Notwithstanding her admission, Pheigaru refused to withdraw her failure to accommodate claim and, as a result, out of an abundance of caution, SEPCo has addressed Pheigaru's failure to accommodate claim.

Assuming *arguendo* that she exhausted her failure to accommodate claim, Pheigaru nevertheless cannot establish a *prima facie* case of failure to accommodate.  To establish a *prima facie* case of failure to accommodate, Pheigaru must prove that:  (1) she has a disability; and (2)

SEPCo failed to provide a reasonable accommodation for that disability.  *Gunderson v. Neiman-Marcus Group, Inc.*, 982 F. Supp. 1231, 1236 (N.D. Tex. 1997).

As discussed above, having a "large baby" and breast-feeding do not constitute disabilities under the ADAAA.  However, assuming *arguendo* that she has established that she is disabled as a matter of law, Pheigaru must establish that SEPCo failed to provide a reasonable accommodation for those disabilities.   *Id.* at 1236.  At her deposition, Pheigaru admitted that SEPCo repeatedly granted accommodations when requested by her:

- Pheigaru requested a leave of absence and SEPCo granted a leave of absence. Pheigaru Dep. at 72:20-73:9, 73:17-76:14, 77:15-21.

- Pheigaru requested a room to breast-feed in her building and SEPCo provided a room to breast-feed in her building.  *Id.* at 267:7-12.  Although she now claims that she was not completely satisfied with the room, Pheigaru admitted that she did not complain to human resources that the accommodation was inappropriate.  *Id.* at 267:13-268:9.

- Pheigaru requested a rolling backpack and SEPCo provided a rolling backpack.  *Id.* at 317:25-320:2.

- Pheigaru requested a parking pass and SEPCo provided a parking pass.  *Id.* at 327:18-328:13.

- Pheigaru requested a refrigerator in her cubicle and SEPCo provided access to a refrigerator in the same building as well as in the pumping room.  *Id.* at 321:4-327:17. Pheigaru admitted that she did not complain to anyone about not having a refrigerator in her cubicle because she thought it was reasonable that she did not get a refrigerator in a cubicle.  *Id.*

Pheigaru cannot point to a single occasion on which a request for reasonable accommodation was not granted by SEPCo.[9]  Because she failed to establish her failure to

---

[9] In her Original Complaint, Pheigaru alleges that SEPCo failed to accommodate her by insisting that she had to "complete her targeted performance levels for work that would otherwise be completed by others in a twelve (12) month period, in whatever reduced period Ms. Pheigaru was able to work due to the medical leave and disability." Plaintiff's Original Complaint ¶ 23.  Despite the undisputed evidence that SEPCo's policy on the performance ranking process specifically provides for an equitable approach towards employees who have been absent from work for less than a calendar year—in other words, employees are ranked based on performance in the job and, as a result,
28249017.3

accommodate claim, Pheigaru's failure to accommodate claim fails as a matter of law and should be dismissed.

## V.      CONCLUSION

Based on the facts presented and the legal authorities, SEPCo respectfully submits that Pheigaru has failed to establish any of the claims as a matter of law.   Accordingly, SEPCo respectfully requests that this Court grant it summary judgment and dismiss Pheigaru's claims in their entirety.   SEPCo further respectfully requests that the Court grant it any and all other relief to which it is entitled.

Dated: May 9, 2017

OF COUNSEL:
Fazila Issa
State Bar No. 24046136
Fed I.D. No. 566478
fazila.issa@nortonrosefulbright.com

**NORTON ROSE FULBRIGHT US LLP**
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile:  (713) 651-5246

Respectfully submitted,

_/s/ Shauna Johnson Clark_____
    Shauna Johnson Clark
    State Bar No. 00790977
    Fed. Id. No. 18235
    shauna.clark@nortonrosefulbright.com

Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile:  (713) 651-5246

**ATTORNEY IN CHARGE FOR DEFENDANT SHELL EXPLORATION AND PRODUCTION COMPANY**

---

are not penalized for taking a leave of absence, Pheigaru admitted that she never requested any such accommodation.  Petit Dec. ¶ 3 and Exhibit E, IPR; Pheigaru Dep. at 331:12-334:2.
28249017.3

## CERTIFICATE OF SERVICE

I hereby certify that, on May 9, 2017, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, Houston Division using the electronic filing system of the court.  The electronic filing system sent a "Notice of Electronic Filing" to the following attorneys of record:

M. Kevin Powers
PORTER & POWERS, PLLC
5900 Memorial Drive, Suite 305
Houston, Texas 77007


_____/s/Fazila Issa_____
Fazila Issa

28249017.3